We'll call the case of Advanced Electronics, John Doran, trustee, versus the Courtrights. Yes. And Mr. Nawalus. Correct. Your Honor, if the Court please, my name is Robert Nawalus. I represent the trustee in bankruptcy of Advanced Electronics, John H. Doran, who happens also to be my partner. I would like to reserve two minutes for rebuttal. That request will be granted. Who drafted that consent letter? I was not litigating counsel at that time. Yeah, I love that. We get that in every case. No one has ever applied these things. Trial counsel for the trustee during the case before Judge Woodside was Pepper Hamilton. And counsel for the Courtrights at that point was... Well, anyways, they're not here. They're not here. Last week, the Court asked the parties to address the impact of Borman v. Raymark Industries, Inc. on this case. And I'm sorry I didn't find that case. I was a little bit surprised that neither side addressed that case. For my part, Judge, I thought reading the statute itself, 362, it was clear on its face that it affected more than going against property of the estate. And certainly Borman makes clear that the district judge was wrong in his May 2, 2007, order when he concluded in footnote 9 that the trustee could have immediately proceeded against the stock that was pledged to secure the estate. But the district court judge dealt with that on the reconsideration, right? Didn't he say that's beside the point completely? He backed away from it, Your Honor. I argued that point in my motion for reconsideration, and he did back off of that the second time around in the order deciding the reconsideration motion. I think it's clear the state applies from the clear language of 362, and Borman concludes very clearly that Section 362A1 stays pending proceedings brought directly against the debtor regardless of whether or not they involve property of the estate. So speak to Judge Dalziel's response to your motion for reconsideration, which is the stay issue is beside the point. The question is what did the consent order say, and what is the power of a bankruptcy court and a district court to impose some never-ending set of constraints on litigating parties? Judge, I think he backed off of that, but I think it tainted. His view on that tainted another aspect of the case that he addressed in his opinion as well, and that was when he indicated that the trustee had taken no action for six years to enforce any aspect of the consent order. That clearly is not – it's clearly factually erroneous. The record indicates, and I point out in part two of my reply brief, that during the pendency of Philip Courtright's bankruptcy, five motions for relief from stay were filed by the trustee and three motions to dismiss the case were filed. Courtrights on their behalf, or Mr. Courtright in his case, vigorously opposed those orders, giving assurance to the trustee that he would come forward with a reorganization plan that would adequately take care of the trustee's claim for damages, which at that point was in excess of $2 million, if you include pre- and post-petition interest. The critical issue, as Your Honor has observed, is when the October 23, 1996, consent order terminated. The bankruptcy court and district court felt that it was terminated following the appeal. That brings up an interesting question. When following the appeal? Once the court sustained the district court's order on appeal? Once the mandate issued? At what point in time, if there was a temporal termination of that order, at what point did it occur? Do we have to reach the question about what the law with respect to the power of the courts is if the language of the consent order itself is dispositive? For me, analytically, the first step is, what did the parties agree to? And Judge Dalziel points out that not just once, not just twice, but at least four times, and then implicitly perhaps more than that, the consent order talks about during the pendency of the appeal, during the pendency of the appeal, during the pendency of the appeal, repeatedly. If we read that as Judge Dalziel read it and as the second bankruptcy judge read it, do we ever get to the question of power because the parties dealt with it all by themselves and what they agreed to? Your Honor, it is true that there are three areas where the consent decree talks about pending appeal. And they are the marshal shall hold the stock in trust as security pending appeal, the trustee was stayed from executing on the judgment pending appeal, and the distribution of the rent receipts was restricted pending appeal. What effect did the court's order have then when it said that this shall extend to the appeal before the circuit court? Do you follow what I'm saying? The district court order, Judge? Yeah. I view that as adopting exactly what the bankruptcy court had approved as a consent order. The important issue. I mean, admittedly, I think maybe it's ambiguous. There are parts that say during the pendency of the appeal. There are other parts that don't say that. Exactly. And there are parts that appear to contemplate what will happen when the appeal is over. So you could read it a number of ways, but I wonder what effect the court's order had when they appear to say, I forget the exact language. You know what I mean. During the appeal, it would apply, it would be extended during the appeal to the court of appeal. As I said, Judge, only three specific provisions were phrased in terms of pending appeal. Everything else in the consent order, in my view, was self-executing and not temporarily limited. And that's the way it should be because the consent order was meant, was arrived at and implemented in lieu of a supersedious bond. If we had played hardball here and said, no, we're not going to agree to a consent order, we want a supersedious bond, this case would have been over many years ago. We would have been paid our judgment. That didn't occur. Let me ask you one question about the supersedious. Actually, the stock was pledged. Yes. The stock was pledged and it was held by the marshal, custodio, what is it, custodio legis. Does that make any difference on the stay issue and the 362 issue that the marshal was holding the stock? I don't see. It has, well, the case cited by the court rights, I contend, does not support their contention because even that case indicated that although the property there was in custodio legis, that the debtor still had a contingent interest if things went a certain way, he might get this pledged collateral back. So even though it's custodial legis, it's not a clear argument that it would support the court rights position. But I think the Borman case adequately addresses and clearly addresses the fact that the stay is broader than that. So the trustee was stayed upon the filing of Mr. Corcoran's bankruptcy from proceeding against the stock. He tried to get relief from stay to do that. Was there anything that prevented the trustee from approaching the court and saying, if I can't have relief from the automatic stay, Your Honor, I have an insurmountable problem and I need a revision in the consent order or I need an actual supersedious bond as opposed to the consent order? You seem to be arguing that the trustee was powerless to do anything. Did the trustee ever go to the bankruptcy court or to the district court or to anybody or even to the court rights and say, look, let's revise the terms of this consent order to address the fact that Philip is now in bankruptcy and therefore we're in a posture where we might lose our rights. Your Honor, at the time we did not see any need for that because first we had sought to obtain relief from stay to proceed to enforce the consent decree. But you lost that repeatedly, you said. Yes, in part because Mr. Corcoran said he was going to take care of us in a plan that would involve the properties that the two companies owned. He was going to refinance them or in some way, fashion a plan of reorganization. So the trustee put his faith in somebody who had already been found to be a defrauder, a breacher of fiduciary duties and someone against whom the trustee had a judgment of a million and a half dollars on a trust me, we'll take care of you basis? Judge, we did not know that Mr. Corcoran's father foreclosed against the property until Philip Courtright's case was converted from 11 to 7. In the following fall, that happened in February of whatever year, the following fall, September, October, he attended the 341 hearing in his personal bankruptcy, a meeting of creditors, at which time he said, well, yes, the companies used to own those properties. But guess what, my father foreclosed on them, on one of them, and I allowed the second one to go to tax sale and be bid on by a related company. We did not know those facts. We thought we were fully secured and protected with an existing consent decree, and that's why we didn't do anything aside from that. We thought that we were protected. And your argument on appeal is, and I think you actually said, that Judge Sassel failed to understand, or quote, ignores the meaning and purpose of a supersedious bond, right? Yes. That's a quote from your brief. And you've got language that you quote from cases that talk about supersedious bonds, but these cases that you quote say things like, the purpose of a supersedious bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. That's the phrase in the one case you cite on page 15, another cite on page 15, the purpose of the supersedious bond is to preserve the status quo during the pendency of an appeal. How did Judge Dowsell misunderstand or ignore the purpose of a supersedious bond when we've got case after case that you cite to us that say the purpose is to maintain the status quo pending appeal? Because at the end of the appeal, Judge, we would have been paid if there were a supersedious bond. I think that's clear. And this consent decree was entered into in lieu of a supersedious bond because the court rights claim they couldn't afford one. So we accommodated them and agreed to this arrangement, and it certainly didn't work out the way the trustee thought it would. If we found that consent order to be ambiguous, what would we look at to understand what it means? I think you look to the language of it and what purpose it was intended to affect, and that is to preserve the trustee's position, to make sure that he got paid his judgment if he prevailed on appeal, and he did. And Mr. Courtright filed bankruptcy. We were prevented by 362 from going after the asset, and then he allows his father to foreclose on it. Nothing happened between the conclusion of the appeal and the filing of the bankruptcy to execute or get the advantage of the consent order. Is that correct? Your Honor, the sequence was the Third Circuit decided the case, I think, in July something of that year. Within a very short time, Mr. Courtright filed bankruptcy, and then the mandate issued, I think, in October. So at no time were we able before his bankruptcy to act on the consent decree. The time just wouldn't allow it. All right, Mr. Nivellas, we'll have you back on rebuttal, and let's hear from Mr. Knupp. And then Ms. Hughes. May it please the Court, my name is Robert Knupp. I represent Philip Courtright. With me at council table is Deborah Hughes representing Patricia. We've asked to divide our time, I believe, eight and seven minutes. It was certainly just a draw of the straw when we suggested that. But there are some arguments that Ms. Hughes has for her clients that are different than mine. First of all, I'll depart company from opposing counsel to say that I think he's wrong, and I think Judge Dalzell was right. And I also think that because of the courts drawing our attention to the Borman v. Raymark case, he was right, and I'll explain why. It's clear that both in Borman v. Raymark and a companion case that was decided a year later, I have the citation, I believe it was Raymark Industries v. LEI, which was decided by Judge Henderson in 1993, that both cases involved issues where there was a supersedious posted pending appeal. And those words are so important. The words are important because if you look at the record at pages 272 to 274, and you look at Judge McClure's order, which is what is now before this court. Yeah, but the consent is before us too, and there are provisions in there that seem to indicate what happens after appeal, don't they? I don't think so. I don't think that there was any contemplation. And again, I stand here not being Greg Miller and not being Michael Anders, the two lawyers that drafted it, whose names appear at the end of it, to know, but I think that if you look at the accompanying pleadings that came before it, it was clear that it was to act as a supersedious bond pending appeal, and that's what we have. The reason why I say that Raymark v. Borman doesn't apply is this. This appeal concluded on January 29, 1999. This court handed down its decision affirming the district court. Mr. Courtwright's bankruptcy was filed three days after that, on July 2nd. Actually, it was in June, not January. Did I say January? I apologize. You meant June. I meant June 29th and July 2nd of 1999. At the point when the court ruled, the appeal no longer pended, if that's the word. You understand what a mandate is, don't you? I understand what a mandate is. And when's the appeal over? I'm sorry, go on. When does our court lose its jurisdiction? I think your court loses its jurisdiction upon the expiration of the appeal time, which would have been the 90-day period. Which is the mandate. But I still say that at the point of June 29, 1999, there was no longer appeal pending, and therefore, if you take the 541 approach, the property of the state approach, and you take the snapshot on July 2nd, you will not find that there was any interest that Philip or Patricia had in the stock that was pledged at that point that was contingent, that was property of the state, or even came close to being related to it jurisdictionally under, I think it was 28 U.S.C. 1334, which was cited. The other strange thing in the Borman case that applies sort of in the inverse is the issue about how subsection C1 applies, which is 362 C1, which is the language which basically says that if there is a stay against property of the state under subsection A, that it continues until such property is no longer property of the state. There was no property of the state that remained, which could be affected by the automatic stay on June 29th, 1999, because the appeal was no longer pending. Both the Borman and the Lake case make much of the facts. The stock could have been used to satisfy an obligation. Isn't that right? It wasn't a fanciful thing to post this stock. It was carefully negotiated because it had real value, and it was expected that Mr. Courtright, in pleading poverty, I can't get a bond, would actually comply with the terms of the consent order and that that real property represented by the stock would be available, something which, as circumstances have turned out, if Judge Dalziel turns out to be right, he will have perhaps once again affected something less than an above-board transaction to relieve himself of responsibility with respect to, but it was clearly the intent of the parties to have real money available. I agree. Now let's take a look at another date, which is February 6th, 2003. On February 6th, 2003, several of the advanced trustee's motions were considered, and the case converted to Chapter 7. As of that moment, the easiest thing that this trustee could have done would have been to have picked up the phone and said to the Chapter 7 trustee, I'd like to get the stock that was pledged. Would you consent to my filing a relief from stay so that I can get the stock from the estate? Did he do that? Never. On page 415 of the record, Mr. Doran was questioned about what activities he took and A few people didn't notify him what you were doing, about what you were doing either, did they? Your Honor, there was no notice given, because I don't think there was any contemplation at that point, and I didn't counsel. I did not counsel any actions. I was under Lamy, which was decided the previous year by the Supreme Court. I felt that once the case was converted, I had no legal right to represent the debtor, and I believe that's the law. But in any event, whatever happened, I do not believe that anybody had a contemplation that the consent order was still alive. I believe there were no monthly reports. That's one of the requirements. There were no monthly reports filed after 1999. I don't know what was filed before then. There were no income statements. There was no enforcement as to the $1,000 being a limit of all those things. You wouldn't check with the trustee to see what his view was of the whole thing. I'm sure that in hindsight, probably this wasn't handled the best way. I'm not going to defend the way it was handled. Judge Gordon was very kind in his language. I'll be a little more explicit. I think what was done here is a little bit sharp. It may have been, and I can't disagree. I will say, however, that it was challenged by the trustee in state court with respect to fraudulent transfer actions, and those fraudulent transfer actions were, first of all, defeated at the state court level, the common pleas level, and appealed to the Superior Court, and the Superior Court found that there was no fraudulent transfer. I would yield the rest of my time. I'd be happy to answer questions. I have about 26 seconds according to the clock in front of me. Okay. We'll hear from Ms. Hughes. Thank you. May it please the Court? My name is Deborah Hughes, and I'm a charter member of the American Bankruptcy Institute's College of Board Certified Consumer Bankruptcy Attorneys. I'm here today to represent the Apali Patricia Courtright, wife of Philip Courtright, in this matter pending before you. I would like to limit my discussion to two points, which are specifically integral to the argument for Patricia and not necessarily applied to Philip. Number one, the automatic stay, which has been argued for the past 25 minutes or so, doesn't apply to Mrs. Courtright. Why is that? Mrs. Courtright never filed a personal bankruptcy until many years later. In fact, it wasn't until November of 2003. The shares of stock were owned by her. Mr. Dorn admitted that he could have secured her shares of stock in both Lycomen Creek and Moravia on June 29, 1999, when the Third Circuit denied the appeal. He chose not to. He filed individually, and she later filed individually. That is correct. There was no tenancy by the entirety's filing. There was no tenancy by the entirety's. It was two separate bankruptcies. Her case proceeded along a path. They were combined for administrative purposes to get to this point. So November 25, 2003, she filed bankruptcy. The automatic stay, if any, attributed to Phil by his bankruptcy filing could not have applied to her. Okay. What would have he done? What could have been done involving those two different shares of stock? Two things. Number one. What about the Moravia stock? Wasn't that jointly held? It was jointly held, but the record will show in three or four different places that it was not held as tenancy by the entirety's. No, because it's stock. That's correct. It was held in joint tenancy, though, was it not? Tenancy in common. It did not say on the stock certificates, but a provision of bankruptcy law says that when you file an individual bankruptcy, a trustee in bankruptcy can partition even tenancy by entirety's. The trustee had not done that. Did not do that. You revert here to Pennsylvania law, and Pennsylvania law holds the reverse of what you just articulated. The federal bankruptcy law allows a trustee in bankruptcy upon the filing of one individual spouse to partition assets of joint spouses, whether it's held by tenancy entirety's or not. Okay. All right. What about the? The easier one is the other one. She owns separate shares of stock in Lycoming Creek. She owns 490 of the 1,000, correct? That is correct. Okay. And executing against that 490 shares would have made the trustee a minority shareholder. Simple task other than that, Your Honor. All he had to do was file a list pendant in state court saying that these actions were pending in the federal court. That puts, it's not a lien, it's not a violation of the automatic stay. Even in Phil's case, it wouldn't have been a violation of the automatic stay. He could have filed the list pendants, putting the world on notice that there was some pending action. Take a look at it. And it does two things. Number one, it tells anybody looking at anything related to those properties that there's something going on. A lawsuit is, quote, unquote, pending on it. And number two, it requires both the taxing authority and any foreclosing creditor to give him notice of any actions against the real estate. I cannot fathom, and neither could the district court judge, and neither could Judge Bailing, why he didn't take that simple step. And truly in- You did have this consent decree on record here in federal court. Surely, but as Your Honor pointed out, these perhaps were not the most reliable, honest, integral people. And I think the trustee had a duty to protect his own self. And in doing that, the filing of the list pendants was merely the notice. He could have done that easily. He could have secured my client's stock, done the filing of the list pendants, but for whatever reason, he sat on his hands to his own detriment. So that was my first argument. The second argument is that even if this court decides for some reason to hold that the consent order did not end upon appeal, as we argued in our brief and as the lower courts have held with us, I think if you look at the Max's Seafood case, you cannot hold Mrs. Courtright liable for contempt in any case. She, as the record will show, never saw the consent order until many years later. Is that issue really in front of us? Excuse me? Is that in front of us? Yes. Is that on the record? Is that established on the record? Yes, Your Honor. Yeah, but that's not in front of us, is it? Well, no, Your Honor, except for the fact that you have some choices in doing your remand with certain decisions. So I would think that it's certainly relevant as to whether or not she could be held responsible under the auspices of your decisions in Max's Seafood, where to hold a partner, whether by contract or by marriage, liable vicariously for the acts of the other, is something that, of course, cannot be held. So I would ask you to look at that. We thank you, Ms. Hughes. Thank you, sir. Mr. Newells? Yes, sir. Addressing Ms. Hughes' points first, Your Honor, I think she is dead wrong on how this stock was owned. I refer the Court to page 125A of the appendix, where it says, and this is where the consent decree appears, it says, whereas all the shares of Marvier are jointly owned by the court rights. I think it's a very clear law of this commonwealth that when you have husband and wife owning something jointly, the presumption is joint tenancy by the entireties. The very next sentence, the very next. Joint tenancy. Pardon me? Joint tenancy. They own it as joint tenants. No, I think there's a presumption, Your Honor, when it's held by husband and wife, unless there's contrary language, it's deemed to be tenancy by the entirety. Okay, correct. The very next paragraph says that 510 shares of Lycoming Creek were owned by Phillip and 490 were owned by Mrs. Courtright. So at most, the trustee could have obtained a minority interest, perhaps in the 490 shares of Lycoming Creek Road. The other point Ms. Hughes makes is likewise fallacious, and that is that we could have protected ourselves by filing a list of pendants. Hold on just a second. When you say at most we could have gotten a minority share, why didn't the trustee do what it could have done, quote, at most, unquote? Your Honor, in part it was because of the pendency of the Chapter 11 case of Phillip Courtright where his counsel was advising us that he was out seeking financing, we would be taken care of, all he needed was time, and don't worry, we're going to finally fess up to this judgment that Judge Woodside entered, including a punitive damages component. There was a suggestion that we could file a list of pendants. Judges, we didn't have a claim against the corporations. We had a claim against the stock of the corporations. I don't see where we would have any standing to file a list of pendants against these corporations. That is undoable legally and might be actionable. The other point, Mr. Nuff mentioned the related litigation in Pennsylvania State Court. No court determined on the merits that there was no fraudulent conveyance. It was determined on a summary judgment where the court would not extend the time for discovery and therefore they determined that the trustee had not prevailed on the summary judgment standards. The court, neither the common police court nor the appellate courts ever reached the issue on the merits as to whether or not this scheme that Mr. Courtright was involved with was all good and proper. That simply was never raised. Mr. Avalos, one question I have since your red light is on. Even if we agreed with your position, shouldn't you have gone into the district court as opposed to the bankruptcy court as a content motion? I believe, Your Honor, that was not necessary because when the court issued its mandate, jurisdiction reverted to the bankruptcy court. Didn't it revert to the district court? Isn't that the court from which the appeal came? That's true, Your Honor, but then that court would have... But that court didn't. I'm not sure of the record on that, Your Honor. I thought it was automatic once the district court, which is remanded to the district court because of the mandate that it would likewise revert to the bankruptcy court from whence it came. Okay. Thank you, Your Honor. All right, thank you very much and we thank counsel for their arguments and we'll take the matter under advisement.